UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

HANNAH REYNOLDS,

    Plaintiff,

v.

UPWIRE CORPORATION,

    Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Hannah Reynolds ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, hereby brings the following action against Defendant Upwire Corporation ("Defendant") pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.*, and alleges as follows:

## INTRODUCTION

1. Defendant hired Plaintiff as Chief Marketing Officer on December 20, 2021, but wrongfully misclassified her as a "Contractor," unconscionably withheld her wages, denied her overtime wages, breached its contractual obligations to her, and then inexplicably terminated Plaintiff on May 13, 2022 after she complained about wage violations.

## PARTIES AND JURISDICTION

2. Plaintiff is an individual residing in the City of Williamsburg, County of Whitley, and State of Kentucky.

3. Defendant is a domestic for-profit corporation headquartered in Terre Haute, Indiana.

4. This Court has federal question jurisdiction pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and original diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Defendant is now, and at all times mentioned was, headquartered in Indiana and Plaintiff is now, and at all times mentioned was, a citizen domiciled in the State of Kentucky. In addition, the amount in controversy is greater than $75,000, exclusive of costs and attorneys' fees.

5. This Court has proper supplemental jurisdiction pursuant to 28 U.S.C. 1367 over Plaintiff's breach of contract claim because it arises from the same case and controversy.

6. Venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. § 1391 because Defendant regularly conducts business in Terre Haute, Indiana, which is located in the Southern District of Indiana.

## FACTUAL ALLEGATIONS

7. Plaintiff was hired by Defendant as Chief Marketing Officer and began her employment with Defendant on December 20, 2021.

8. During her time as Chief Marketing Officer, Plaintiff regularly worked over fifteen (15) hours per day, seven days per week.

9. Plaintiff was terminated on May 13, 2022.

**Plaintiff was misclassified as a "Contractor" and
wrongfully withheld payment.**

10. In her role as Chief Marketing Officer, Plaintiff labored over sales presentations,

contributed to the creation of Defendant's website and its updates and monitored Defendant's website for regulatory compliance, along with many other job duties.

11. In lieu of wages or a salary, Plaintiff received 20,000 common shares of stock in the company.

12. The payment plan described in Plaintiff's Employment Agreement for "Phase 1," whereby Plaintiff would receive stock in lieu of a salary, is permitted only under the "business owner" exemption of the Fair Labor Standards Act ("FLSA") and only if the following conditions are met:

> a. The employee owns at least a bona fide 20 percent (20%) equity interest in the enterprise; and
>
> b. The employee is "actively engaged" in the management of the enterprise.

29 CFR § 541.101.

13. According to the Wyoming Secretary of State, Defendant is permitted to sell 1,000,000 common shares of stock.

14. Plaintiff therefore owned only a 2% equity interest in Defendant's company.

15. Moreover, Plaintiff was not "actively engaged" in management.

16. The "business owner" exemption therefore does not apply to Plaintiff.

17. As a misclassified independent contractor, Plaintiff was not adequately compensated for her hours worked, including egregious amounts of overtime.

18. Defendant dictated how Plaintiff performed her job duties, which is consistent with the treatment of an employee – not an independent contractor.

19. Plaintiff began her employment with Defendant as a "Contractor." However, Plaintiff was misclassified and should have been a W2 employee.

20. Plaintiff's duties were consistent with those of an employee as defined in 26 CFR § 31.3401(c)-1(b), § 31.3121(d)-1(c)(2), § 31.3306(i)-1(b).

21. To determine whether a worker is an employee under the FLSA, courts embrace the "economic reality" test, which considers six factors:

    a. The permanency of the relationship between the parties;

    b. The degree of skill required for the rendering of the services;

    c. The worker's investment or equipment or materials for the task;

    d. The worker's opportunity for profit or loss, depending upon her skill;

    e. The degree of the employer's right to control the manner in which the work is performed; and

    f. Whether the service rendered is an integral part of the employer's business.

*Acosta v. Off Duty Police Services, Inc.*, 915 F. 3d 1050 (6th Cir. 2019).

22. Plaintiff's work assignments came exclusively from Defendant.

23. Plaintiff was required to "devote her attention and time as much as possible, with full time effort when time allows . . . as directed by the Board of Directors, or as assigned by its managers." **Exhibit A, Employment Agreement.**

24. All materials Plaintiff utilized to complete her work were paid for and provided by Defendant.

25. Defendant made Plaintiff sign a laptop agreement.

26. Defendant provided Plaintiff with two company credit cards to purchase all business expenses.

27. Plaintiff's financial investment was minor when compared to that of Defendant.

28. Defendant furnished Plaintiff with the tools to do her job.

Case 2:22-cv-00435-JPH-MJD   Document 1   Filed 10/03/22   Page 5 of 13 PageID #: 5

29. Plaintiff's employment relationship with Defendant was permanent.

30. Plaintiff did not invest in equipment or materials for her tasks.

31. Plaintiff had no opportunity for profit or loss depending upon her skill.

32. Plaintiff was not in business for herself and truly independent but was, instead, financially dependent upon Defendant for employment.

33. Plaintiff's employment agreement recognizes Defendant as Plaintiff's "Employer" and states that Plaintiff is an "at will" employee.

34. Defendant listed Plaintiff as an "employee" in its "Org Chart."

35. Defendant significantly controlled the manner in which Plaintiff performed her work.

36. The services rendered by Plaintiff were an integral part of Defendant's business.

37. Plaintiff does not qualify for any exemption under Section 13(a)(1) of the Fair Labor Standards Act.

38. Although Defendant hired Plaintiff as a "Chief Marketing Officer," she was tasked to perform primarily non-managerial and non-administrative job duties.

39. Plaintiff had no authority or discretion to unilaterally hire other employees.

40. Plaintiff had not authority or discretion to unilaterally discipline other employees.

41. Plaintiff had no authority to establish the pay scale or schedules of other employees.

42. Plaintiff did not exercise discretion and independent judgment with matters or significance.

43. Plaintiff was not allowed to deviate from established policies and procedures outlined by Defendant to complete her job duties.

44. Plaintiff was not allowed to work for other companies.

5

45. In fact, Defendant's CEO, Josh Thome, told Plaintiff via text message that Plaintiff was not to get a second job to offset her financial losses from not being paid.

46. Plaintiff was offered insurance benefits by Defendant.

47. Defendant did not pay Plaintiff a minimum wage, or any wage for that matter.

48. Plaintiff's primary duties as "Chief Marketing Officer" did not require advanced knowledge defined by 29 C.F.R. § 541.301(e)(2) as "work which is predominantly intellectual in nature, and which includes work requiring consistent exercise of discretion and judgment."

49. Plaintiff instead performed non-managerial and non-administrative job duties that were simultaneously being performed by non-exempt employees.

50. Defendant maintained control, oversight, and direction over Plaintiff, including the promulgation and enforcement of policies.

51. Defendant was involved in the employment decisions concerning Plaintiff, including, but not limited to, decisions of Defendant's wage and salary policies and practices that affected Plaintiff.

52. Defendant benefitted from the work Plaintiff performed.

53. Plaintiff had no ability or opportunity to make a profit while performing her duties.

54. Plaintiff's contract with Defendant provides:

> [Plaintiff] agrees, during the 5 year term hereunder, that she will devote her attention and time as much as possible, with full time effort when time allows, *during working hours*, to the business affairs of UPWIRE Corp and to perform all her duties faithfully and efficiently, as directed by the Board of Directors, or as assigned by its Managers. **Exhibit A, Employment Agreement**.

55. Plaintiff never received overtime pay despite routinely working an average of approximately one hundred and five (105) hours per week.

56. Defendant disregarded the Department of Labor's warning to companies who

provide federal contract staffing to follow FLSA overtime requirements.

57. Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

### Defendant Breached its Employment Agreement with Plaintiff

58. Pursuant to the Employment Agreement, upon the completion of Phase 2 of Upwire's launch, Plaintiff "shall begin receiving compensation in the form of bi-weekly payments and . . . shall automatically convert to a W2 employee." **Exhibit A, Employment Agreement.**

59. The employment agreement estimated that Phase 2 of Upwire's launch would be "completed on or about 02/30/2022."

60. However, CEO Josh Thome later declared in a meeting that Phase 2 of Upwire's launch would not *begin* until April 15, 2022, almost seven (7) weeks after it was originally scheduled to begin on February 30, 2022.

61. At that time, CEO Tiffanie Lee verbally told Plaintiff that she "*deserved immediate payment.*"

62. Plaintiff subsequently met with Ms. Lee, who informed Plaintiff that she would be paid at least by the end of the second phase for all hours she had worked since December 20, 2021.

63. On May 3, 2022, Plaintiff still had not received any payment from Defendant.

64. On May 3, 2022, Josh Thome sent Plaintiff a text message stating "Can we meet today and discuss a plan to get you paid."

65. However, even after meeting with Mr. Thome, Plaintiff still did not receive any payment from Defendant.

66. Thereafter, Plaintiff sent Mr. Thome a text message, stating

> I have run out of resources this month. I don't leave my house, and stay at my desk day and night to pick up work. But, I'm going to

      have to get a second job until we get payroll coming through. It's just had me not myself and I just don't know how I'm going to do it.

67. Mr. Thome responded to Plaintiff's text message "No you aren't. We will figure this out."

68. However, as of May 13, 2022, Plaintiff still received no payment from Defendant.

69. On May 13, 2022, Plaintiff initiated a group text with several of Defendant's management team, and stated the following:

      You told me multiple times that payment was to start May 20th and verified you owe me . . . [y]ou also verified my employment with the no contact order. And, I was asked about benefits . . . [o]n the weekly meeting of April 15th, we agreed we were in Phase 2, therefore: I was a salary employee and owed my back pay."

70. In response, on May 13, 2022, Lauren Baldino, Defendant's Human Resources Director, sent Plaintiff a text instructing her to check her personal email after a brief phone call in which she informed Plaintiff "[Defendant] [is] going in another direction."

71. On May 13, 2022, Plaintiff received an email containing a separation agreement.

72. The separation agreement stated in part, "Upwire Corp. agrees that, pursuant to the terms of the Executive Contract, Hannah Reynolds is owed a sum of $31,250."

73. Defendant terminated Plaintiff on May 13, 2022 without warning.

74. According to the Employment Agreement, Plaintiff was entitled to a minimum advance written notice of fifteen (15) days prior to her termination.

75. Plaintiff did not receive fifteen days notice prior to her termination.

76. Defendant terminated Plaintiff to circumvent its wage obligations to Plaintiff after Plaintiff took issue with her earned wages being withheld.

77. Defendant's CFO, Lisa Bendixen, told Plaintiff that she was being terminated for

"an unfulfilled contract."

78. Defendant offered Plaintiff no other reasoning for terminating her.

79. Defendant's proffered explanation for Plaintiff's termination is nothing more than an effort to conceal that Plaintiff was terminated because she took issue with her earned wages being withheld.

80. Plaintiff had no disciplinary record with the Company.

81. Defendant had no concern regarding Plaintiff's work performance until she became vocal about not receiving payment.

82. In fact, Tiffanie Lee regularly bragged about Plaintiff's work ethic.

83. There is no excuse not to pay Plaintiff her outstanding wages and overtime pay.

84. To date, Defendant has not paid Plaintiff anything.

85. Defendant breached the Employment Agreement when it did not provide Plaintiff 15 days' notice prior to her termination.

86. Defendant breached the Employment Agreement when it did not begin its second phase of its enterprise on February 30, 2022.

87. Plaintiff further received several express and verbal promises that she would be paid at least by the end of the second phase of Defendant's enterprise for all the hours she had worked since December 20, 2021.  These promises are binding under contract principles and are not barred by the parol evidence rule.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## INDEPENDENT CONTRACTOR MISCLASSIFICATION

88. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

89. Plaintiff was employed as a "Contractor" by Defendant.

90. Plaintiff worked diligently for Defendant beyond normal business hours, including on nights and weekends.

91. The work performed by Plaintiff rendered her eligible for overtime.

92. Defendant's conduct was willful and in bad faith.

93. At all times relevant to this action, Plaintiff was Defendant's employee within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

94. At all times relevant to this cation, Defendant was Plaintiff's employer within the meaning of the FLSA.

95. Defendant's knowing and willful failure to properly pay time-and-a-half for hours worked more than forty (40) hours in a week to Plaintiff based on her misclassification as an "independent contractor" violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

96. As a result of Defendant's unlawful acts, Plaintiff was deprived of unearned wages.

97. At all times relevant to this Complaint, Defendant has been, and continues to be, an employer engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

98. Defendant violated the FLSA when it misclassified Plaintiff as a "Contractor" and failed to pay Plaintiff proper overtime compensation for hours worked in excess of forty (40) per week.

99. As a result of Defendant's unlawful acts, Plaintiff was deprived of earned wages in amounts to be determined at trial. She is entitled to compensation for unpaid overtime wages, interest, liquidated damages, attorneys' fees, and costs, and any other remedies available at law or in equity.

## COUNT II
## BREACH OF CONTRACT

100. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

101. To prevail on a claim for breach of contract, a plaintiff must establish by a preponderance of the evidence that "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *First Am. Title Ins. Co.*, 499 Mich. At 100.

102. The goal in interpreting a contract is to give effect to the intent of the parties, and "[t]he words used in the contract are the best evidence of the parties' intent." *Hemlock Semiconductor, LLC,* 313 Mich. App. at 446.

103. The "5 Year Executive Chief Marketing Officer Contract" executed on December 20, 2021, is a valid contract.

104. At all times relevant hereto, Plaintiff was employed by Defendant as Executive Chief Marketing Officer.

105. Defendant denied Plaintiff wages for work performed since her hiring on December 20, 2021, despite several promises to do so.

106. Defendant owes Plaintiff $31,250 in unpaid wages, not including overtime.

107. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

108. As a further direct and proximate result of the Company's breach of contract, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and

a loss of an impairment of her earning capacity and ability to work and she will so suffer in the future, and she will suffer additional damages in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff claims as follows:

a. An award of unpaid regular wages and overtime wages under the FLSA;

b. An award of accrued vacation time under the FLSA;

c. An award of liquidated damages, interest, attorneys' fees and costs under the FLSA;

d. A declaration that the aforementioned practices and actions of Defendant constitute unlawful violations of contract principles;

e. An award of all lost wages, reimbursements, and benefits, past and future;

f. An award of compensatory damages for nonmonetary loss;

g. An award of exemplary and punitive damages;

h. An award of appropriate equitable relief; and

i. An award of such other relief as this Court deems just and proper.

Respectfully Submitted,<br>
HURWITZ LAW PLLC<br>
<br>
<i>/s/ Noah S. Hurwitz</i><br>
Noah S. Hurwitz (P74063)<br>
<i>Attorneys for Plaintiff</i><br>
617 Detroit St. Ste. 125<br>
Ann Arbor, MI 48104<br>
(844) 487-9489

Dated: October 3, 2022

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

HANNAH REYNOLDS,

    Plaintiff,

v.

UPWIRE CORPORATION,

    Defendant.

Case No.

Hon.

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

## DEMAND FOR TRIAL BY JURY

Plaintiff, Hannah Reynolds, by and through her attorneys, HURWITZ LAW PLLC, hereby demands a trial by jury in the above-captioned matter for all issues so triable.

    Respectfully Submitted,
    HURWITZ LAW PLLC

    */s/ Noah S. Hurwitz*
    Noah S. Hurwitz (P74063)
    *Attorneys for Plaintiff*

Dated: October 3, 2022